UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JAVIER RODRIGUEZ GALVAN,

              Petitioner,

v.

                                   Civil No. 2:26cv100

PAMELA BONDI, *in her official*
   *capacity as U.S. Attorney*
   *General,* et al.,

              Respondents.

### MEMORANDUM ORDER

On January 21, 2026, Petitioner Javier Rodriguez Galvan ("Petitioner"), with the assistance of counsel, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 in the Western District of Virginia. ECF No. 1. The case was subsequently transferred to this Court, ECF No. 6,[1] and Petitioner filed an unopposed motion to amend the Petition. ECF No. 8. Petitioner's unopposed motion to amend is **GRANTED**.

Thereafter, the Federal Respondents were instructed by this Court to either (1) file a Notice indicating that the factual and legal issues presented in this Petition do not differ in any material fashion from those addressed in Ceba Cinta v. Noem, No. 1:25cv1818, 2025 WL 4053171 (E.D. Va. Oct. 29, 2025); Duarte

---

[1] The case was transferred to this Court after Petitioner was physically transferred to an immigration facility located in the Eastern District of Virginia. ECF No. 6, at 1.

Escobar v. Perry, No. 3:25cv758, 2025 WL 3006742 (E.D. Va. Oct. 27, 2025); and Romero v. Crawford, No. 3:25cv788, 2026 WL 94634 (E.D. Va. Jan. 13, 2026); or (2) file an Opposition to the Petition discussing the material differences between these cases and the instant matter. ECF No. 9.

On February 17, 2026, the Federal Respondents filed a Notice indicating that the factual and legal issues presented here do not materially differ from the Eastern District of Virginia cases cited above. ECF No. 11. The Federal Respondents, however, expressed their continued disagreement with these cases in citing a recent Fifth Circuit opinion reaching a contrary result. Id. at 2-3 (citing Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026)). Petitioner, for his part, did not file a reply brief, though he did file a notice of supplemental authority. ECF No. 12.

The above referenced cases from other judges of this Court discuss, in detail, the interplay between 8 U.S.C. § 1225 and § 1226. Section 1225 has historically applied to noncitizens encountered at, or near, designated or undesignated border crossings. In contrast, § 1226 has historically applied to noncitizens otherwise found within the United States.

In 2025, the government, first through an internal memo and later through a decision by the Board of Immigration Appeals ("BIA"), announced a new interpretation of § 1225. According to this new interpretation, "nearly all noncitizens who entered the

2

United States without inspection" and who are later found to be present anywhere in the United States are subject to mandatory detention without a bond hearing under § 1225(b), "rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." Ortega Miranda v. Bondi, No. 3:25cv769, 2026 WL 287179, at *3 (E.D. Va. Feb. 3, 2026) (citation omitted); see Matter of Yajure Hurtado, 29 I.& N. Dec. 216 (BIA 2025).

Since this BIA decision, multiple judges of this Court, consistent with the weight of emerging caselaw, have rejected this new interpretation of § 1225. However, federal judges do not unanimously agree on the issue, as the divided panel of the Fifth Circuit recently demonstrated. Compare Buenrostro-Mendez, 166 F.4th at 502 (explaining that even though the petitioners were not actively pursuing lawful admission when arrested, they were categorically "seeking admission" under § 1225(b)(2)(A) and therefore had no right to a § 1226(a) bond hearing); with id. at 509 (Douglas, J., dissenting) (reaching the contrary conclusion); see also Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1061 (7th Cir. 2025) (indicating in a preliminary ruling that the government was "not likely to succeed on the merits of their argument that th[e] individuals, whom ICE arrested in Chicago without a warrant, are subject to mandatory detention under § 1225(b)(2)(A)").

3

The Supreme Court has "long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." Landon v. Plasencia, 459 U.S. 21, 32 (1982). "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Consistent with this distinction, § 1225, which generally requires detention of noncitizens without a bond hearing, was previously applied to noncitizens attempting to physically enter the United States, whereas § 1226, which generally allows for a bond hearing absent a disqualifying criminal record, was previously applied to noncitizens who had successfully entered the United States (even if unlawfully).[2]

The interpretation of § 1225 and § 1226 raises complex questions to which both sides of the dispute present multifaceted arguments that offer compelling reasoning. However, this Court ultimately agrees with the outcomes in the cases from this District

---

[2] Cf. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 118–19 (2020) (explaining that the noncitizen in that case had no basis to challenge his "confinement during the pendency of [his] expedited asylum review" because it was undisputed "that he was apprehended in the very act of attempting to enter this country," meaning that mandatory detention was proper under § 1225(b)(1), further noting that "simply releasing him would not provide the right to stay in the country" because "[w]ithout a change in status, he would remain subject to arrest, detention, and removal" under § 1226(a)).

4

cited above, noting specifically its agreement with the constitutional analysis in Romero, 2026 WL 94634, at *5-6 (explaining that the government's interpretation of § 1225 "would raise constitutional problems which the Supreme Court is yet to address"); see Aroca v. Mason, No. 2:26cv57, 2026 WL 357872, at *19 (S.D.W. Va. Feb. 9, 2026) (finding that the petitioner's interpretation of § 1225 and § 1226 "align[ed] with longstanding constitutional principles" recognizing that "[n]oncitizens physically present in the United States, whether lawfully or unlawfully, are entitled to greater due process protections than those stopped at the border"); Centeno Ibarra v. Warden of the Fed. Det. Ctr. Philadelphia, No. CV 25-6312, 2025 WL 3294726, at *7 (E.D. Pa. Nov. 25, 2025) ("[T]he canon of constitutional avoidance counsels against the government's interpretation [of § 1225]."); see also Ortega Miranda, 2026 WL 287179, at *10 (finding that the petitioner's "continued detention without a bond hearing violates his right to procedural due process").

Petitioner, who has resided in the United States for more than two decades, unquestionably has due process rights. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (citation omitted). This right to be heard in a meaningful manner takes on even greater significance when physical detention is at stake, particularly

5

when such detention routinely <u>exceeds a year</u>,[3] is civil in nature, and in the absence of a hearing, would be imposed regardless of whether the detainee has committed any statutorily disqualifying crimes or poses <u>any</u> risk of flight or danger to the public.  <u>See</u> <u>Zadvydas</u>, 533 U.S. at 690 ("Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects."); <u>Aroca</u>, 2026 WL 357872, at *18 ("The Supreme Court has emphasized that 'civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" (quoting <u>Addington v. Texas</u>, 441 U.S. 418, 425 (1979))).

Accordingly, Petitioner's § 2241 Petition is **GRANTED in part.** ECF No. 1.  Respondents are **ORDERED** to provide Petitioner with a

---

[3] In 2003, the Supreme Court rejected a constitutional challenge to mandatory detention under § 1226(c) for individuals with a qualifying criminal record, labeling the period of detention during removal proceedings as "brief" and "limited."  <u>Demore v. Kim</u>, 538 U.S. 510, 529-30 & n.12 (2003).  The Court noted that removal proceedings last "roughly a month and a half in the vast majority of cases . . . and about five months in the minority of cases in which the alien chooses to appeal."  <u>Id.</u> (citing statistics from the Executive Office for Immigration Review ("EOIR")).  However, it appears that years later it was discovered that the EOIR data provided to the <u>Demore</u> Court was flawed, with the corrected data revealing that the average detention was approximately <u>one year</u> if the noncitizen appealed.  <u>Rodriguez v. Nielsen</u>, No. 18-CV-04187, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019).  More recent government records indicate that by 2015 the median "days to completion" of removal proceedings involving an appeal had grown to <u>over 450 days</u>.  <u>See</u> <u>Immigration Courts: Actions Needed to Reduce Case Backlog and Address Long-Standing Management and Operational Challenges</u>, Gov't Accountability Off. ("GAO"), at 33, https://www.gao.gov/assets/690/685022.pdf (last visited Feb. 27, 2026); <u>see also</u> EOIR 2025 Adjudication Statistics https://www.justice.gov/eoir/media/1344791/dl?inline (last visited Feb. 27, 2026) (indicating that the EOIR backlog of pending cases, which was less than 700,000 in 2015, had grown to nearly 4 million by 2025).

standard § 1226(a) bond hearing before an Immigration Judge **within ten (10) days of the date of this Order**. In line with due process requirements, Petitioner is entitled to an opportunity to be heard in a meaningful manner at the bond hearing and to a ruling premised on his own case-specific circumstances. Cf. Mendez Trigueros v. Guadian, No. 1:26cv205, slip op. at 7 (E.D. Va. Feb. 18, 2026) (ordering that the petitioner be released unless he received a second § 1226(a) bond hearing that was "constitutionally compliant").

Respondents are **ORDERED** to file a status report with this Court within **three (3) days** of the bond hearing, stating whether Petitioner has been granted bond, and, if his request for bond was denied, the case-specific reasons given by the Immigration Judge for that denial.

The Clerk is **DIRECTED** to enter partial judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Memorandum Order to all counsel of record, and administratively close this civil action.[4]

**IT IS SO ORDERED.**

/s/ ⟨signature⟩
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February 27 , 2026

---

[4] Although the case will be administratively closed, the Court retains jurisdiction to ensure compliance with this Order.